### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALKER WEAR LLC,<br><br>               Plaintiff,<br><br>   vs.<br><br>OFF-WHITE LLC, OFF-WHITE OPERATING SOHO LLC, FARFETCH.COM US LLC, SAKS FIFTH AVENUE LLC, and SAKS INCORPORATED,<br><br>               Defendants. | Civil No. 21-cv-7073<br><br><br>**COMPLAINT**<br>**FOR FEDERAL AND STATE**<br>**TRADEMARK INFRINGEMENT,**<br>**FEDERAL AND STATE UNFAIR**<br>**COMPETITION, AND STATE**<br>**UNFAIR BUSINESS**<br>**PRACTICES**<br><br><br>**Demand for Jury Trial** |

Plaintiff, by its undersigned attorneys, alleges as follows:

### NATURE OF THE ACTION

### PARTIES

1.    Plaintiff Walker Wear LLC ("Walker Wear") is a limited liability company organized under the laws of New York and maintains its principal office at 420 Clinton Avenue, Suite 1A, Brooklyn, NY 11238.

2.    Upon information and belief, Off-White LLC is a limited liability company organized under the laws of Illinois, with its principal place of business at 1920 Adelicia Street, #300, Nashville, TN 37212.

3.    Upon information and belief, Off-White Operating Soho LLC is a limited liability company organized under the laws of New York, with its principal place of business at 350 Fifth Avenue, 41st Floor, New York, New York 10118.

4.     Upon information and belief, Farfetch.com US, LLC ("Farfetch") is a limited liability company organized under the laws of California that is registered to do business in New York.  Upon information and belief, Farfetch, along with its parent company, Farfetch UK Limited, owns a majority stake in and controls the operation of at least some of the Off-White entities.

5.     Upon information and belief, Saks Fifth Avenue LLC is a limited liability company organized under the laws of New York, with its principal place of business at 225 Liberty Street, New York, New York, 10281.

6.     Upon information and belief, Saks Incorporated is a corporation organized under the laws of New York, with its principal place of business at 12 E 49th Street, New York, New York, 10017.

## JURISDICTION AND VENUE

7.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademark claims), 28 U.S.C. § 1338(b) (unfair competition claims joined with trademark claims), and 28 U.S.C. § 1367 (supplemental jurisdiction).

8.     This Court has personal jurisdiction over Defendant Off-White LLC pursuant to N.Y. C.P.L.R. § 302(a)(1).  Defendant Off-White LLC has purposefully availed itself of the privilege of conducting business in the State of New York through its continuous and systematic business contacts with the State, including the operation of a retail store at 51 Mercer Street, New York, NY 10013.  Defendant Off-White LLC, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts business extensively throughout New York by shipping, distributing, offering for sale, selling, and advertising its products and services in the State of New York.  Defendant Off-White LLC, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and

voluntarily placed the infringing clothing articles that are the subject of this Complaint into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this District.

9.      This Court has personal jurisdiction over Defendant Off-White Operating Soho LLC pursuant to N.Y. C.P.L.R. § 301.  The Court has general jurisdiction over Defendant Off-White Operating Soho LLC because Off-White Operating Soho LLC is domiciled in New York. Defendant Off-White Operating Soho LLC is organized under the laws of New York and maintains its principal place of business in New York.  Defendant Off-White Operating Soho LLC also engages in a continuous and systematic course of doing business in New York, thereby availing itself of the privilege of conducting business in the state, by shipping, distributing, offering for sale, selling, and advertising its products and services in the State of New York. Defendant Off-White Operating Soho LLC has purposefully and voluntarily placed the infringing clothing articles that are the subject of this Complaint into this District with the intention and expectation that they will be purchased and used by consumers in this District.

10.      This Court has personal jurisdiction over Defendant Farfetch.com US, LLC pursuant to N.Y. C.P.L.R. § 302(a)(1).  Defendant Farfetch has purposefully availed itself of the privilege of conducting business in the State of New York through its continuous and systematic business contacts with the State.  Defendant Farfetch, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts business extensively throughout New York by shipping, distributing, offering for sale, selling, and advertising its products and services in the State of New York, including through its website farfetch.com. Defendant Farfetch, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed the infringing clothing articles that

are the subject of this Complaint into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this District.

11.     This Court has personal jurisdiction over Defendant Saks Fifth Avenue LLC pursuant to N.Y. C.P.L.R. § 301.  The Court has general jurisdiction over Defendant Saks Fifth Avenue LLC because Saks Fifth Avenue LLC is domiciled in New York.  Defendant Saks Fifth Avenue LLC is organized under the laws of New York and maintains its principal place of business in New York.  Defendant also engages in a continuous and systematic course of doing business in New York, thereby availing itself of the privilege of conducting business in the state, by shipping, distributing, offering for sale, selling, and advertising its products and services in the State of New York.  Defendant has purposefully and voluntarily placed the infringing clothing articles that are the subject of this Complaint into this District with the intention and expectation that they will be purchased and used by consumers in this District.

12.     This Court has personal jurisdiction over Defendant Saks Incorporated pursuant to N.Y. C.P.L.R. § 301.  The Court has general jurisdiction over Defendant Saks Incorporated because Saks Incorporated is domiciled in New York.  Defendant Saks Incorporated is organized under the laws of New York and maintains its principal place of business in New York. Defendant also engages in a continuous and systematic course of doing business in New York, thereby availing itself of the privilege of conducting business in the state, by shipping, distributing, offering for sale, selling, and advertising its products and services in the State of New York.  Defendant has purposefully and voluntarily placed the infringing clothing articles that are the subject of this Complaint into this District with the intention and expectation that they will be purchased and used by consumers in this District.

4

13.    Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) because: (1) all Defendants are subject to personal jurisdiction in this District with respect to this action, as described above; and (2) upon information and belief, a substantial portion of the infringement alleged herein has occurred in this District.

## FACTUAL ALLEGATIONS

### A.  Walker Wear's Well-Known Brand and Products

14.    April Walker, a hip-hop fashion pioneer and founder of Walker Wear, has designed signature streetwear clothing since the 1980s, with a well-known brand and products that play a significant role in—and beyond—hip-hop culture.

15.    In 1987, Ms. Walker opened Fashion In Effect, a custom tailor shop, in Brooklyn, New York.

16.    Ms. Walker moved to fill a void in the fashion industry by starting one of the first urban lifestyle fashion brands.  She founded Walker Wear in 1990, and since then has designed clothing for many of hip-hop's greatest icons, including The Notorious B.I.G., Tupac, RUN-DMC, the Wu-Tang Clan, and many others.  A trailblazer in the field, she worked to open distribution doors for her brand, helping also to pave the way for others who followed her. Indeed, Ms. Walker, and Walker Wear, helped turn the then-freshly dubbed "streetwear" fashion category into the multi-billion-dollar industry that it is today.

### B.  Walker Wear's Valuable Intellectual Property Rights

17.    Ms. Walker's brand and innovative designs are protected by a range of intellectual property rights, foremost among them the trademark and trade dress rights in the WW XXL Athletic mark and related designs (the "Mark" and the "Trade Dress"), pictured on the next page:





18.    Walker Wear has used the Mark since at least 1993 and has invested substantial time, effort, and resources in developing the Mark and using it to promote its products.  As a result of Walker Wear's extensive investment, the Mark and its related works have become widely associated with Walker Wear and the Mark has acquired substantial recognition, goodwill, and fame.

19.    The Mark has been featured on sweatshirts, t-shirts, and sweatpants, and various other products offered by Walker Wear continuously since 1993.  Clothing items featuring the Mark have been, and remain, best-sellers for Walker Wear.

20.     In addition to the prominent coverage of her designs on famous celebrities, Ms. Walker, the Walker Wear brand, and the Mark have enjoyed extensive media coverage.  For example, in February 2021, Black Entertainment Television LLC ("BET") honored Walker Wear on its website (www.bet.com)—including a picture of a clothing design featuring the Mark—in connection with Black History Month, writing that Ms. Walker "single-handedly changed the way celebrities express themselves on the red carpet" and noting the prominence of "her custom-made looks in images and video shoots" of the "hottest rappers like Tupac, The Notorious B.I.G., LL Cool J, and Jay-Z."[1]

21.     Ms. Walker and her designs have also been featured on Vogue's podcast about how New York hip-hop music and streetwear culture went global.[2]  InStyle magazine profiled Ms. Walker as one of the Black women who invented streetwear, calling Walker Wear "one of the first urban brands," whose fans include "Method Man, Notorious B.I.G., Tupac and more."[3]

22.     Ms. Walker was honored in a Fashion Week event in New York in 2020 as a Black pioneer in fashion.[4]  Coverage of the event described Walker Wear as an "urbanwear label worn by everyone from Aaliyah to Snoop Dogg" and stated that Ms. Walker "dress[ed] some of the most influential names in the early oughts of urban fashion."

---

[1] Tweety Elitou, *April Walker: Meet The Woman Who Shaped 90s Hip Hop Fashion With Streetwear Worn By Tupac, LL Cool J, And More!*, BET (Feb. 22, 2021), https://www.bet.com/style/fashion/2021/02/22/april-walker-walker-wear-bhm-interview.html.

[2] Laird Borrelli-Persson, *"Hip-Hop Is Something You Live"—Episode 12 of In Vogue Explores the Connection Between Fashion and Music*, Vogue (Dec. 4, 2020), https://www.vogue.com/article/in-vogue-the-1990s-podcast-episode-12-rappers-on-the-runway-how-hip-hop-changed-fashion.

[3] Hillary Crosley Coker, *Fashion History Forgot the Black Women Who Invented Streetwear*, InStyle (Feb. 1, 2021), https://www.instyle.com/fashion/clothing/state-of-the-arts-streetwear-history.

[4] Jessica Wilkins, *Harlem's Fashion Row Honors Dapper Dan, Misa Hylton and April Walker as Black Pioneers in Fashion*, Yahoo! (Feb. 1, 2020), https://finance.yahoo.com/news/harlems-fashion-row-honors-dapper-170000447.html.

23.    Ms. Walker and Walker Wear (including designs featuring the Mark) were also featured in the 2019 Netflix documentary "The Remix: Hip Hop X Fashion."[5]  The documentary "profiles Black visionaries in fashion who rewrote narratives on the runway and turned hip-hop style into a global phenomenon."  The Mark and the Trade Dress, as they appear in the documentary, are shown below:



24.    Walker Wear's intellectual property rights are especially valuable today as styles from the 1990s have generally returned to prominence.  Indeed, in the words of the New York Times' fashion director and chief fashion critic, people today "may feel as if the '90s are dominant at the moment in part because designers are generally fascinated with the clothing they grew up with and that formed their aesthetics," and, "as millennials increasingly grab attention and creative director positions . . . they'd inevitably want to try their hands at reinventing the influences of their youth."[6]

**C.  Off-White's Willful Infringement of Walker Wear's Intellectual Property**

25.    Despite her status as a pioneer, Ms. Walker and her brand Walker Wear continue to face some of the same "invisible" challenges as when she was first starting out three decades

---

[5] https://www.netflix.com/title/81301825.

[6] Vanessa Friedman, *Should We Really Embrace '90s Fashion?*, the New York Times (May 15, 2021), https://www.nytimes.com/2021/05/15/style/90s-fashion.html.

ago.  One such challenge is the persistence of larger fashion houses misappropriating the work of independent designers like her on the assumption that she and others like her will be unable to meaningfully challenge them in legal proceedings.

26.    Defendants Off-White LLC and Off-White Operating Soho LLC (collectively, "Off-White") constitute one such major fashion house.  Defendants Saks Fifth Avenue LLC and Saks Incorporated (collectively, "Saks") have empowered and collaborated with Off-White in these actions.

27.    Ms. Walker recently became aware that Off-White has been selling a "Diagonal Stripe Varsity Bomber Jacket," referred to elsewhere by other names including "striped-sleeves bomber jacket," ("the Infringing Jacket"), featuring the Mark at Saks Fifth Avenue (including through its website, www.saksfifthavenue.com), on Defendant Farfetch.com US LLC's website, farfetch.com, and through other channels.[7]  The Infringing Jacket is pictured below:



---

[7] *See, e.g.*, https://www.saksfifthavenue.com/product/off-white-diagonal-varsity-bomber-jacket-0400013439913.html; https://www.farfetch.com/shopping/men/off-white-monogram-print-bomber-jacket-item-16049238.aspx.

28.    Ms. Walker first became aware of this appropriation of her intellectual property when her friend and fellow clothing designer, Carlos Maldonado, sent her an Instagram direct message on February 27, 2021, with a link to a Saks ad on Instagram featuring the Infringing Jacket.  When Mr. Maldonado first saw the Instagram ad, he immediately recognized what he believed to be the distinctive Walker Wear "WW" design, which he had seen many times before, and therefore believed that Saks was advertising a Walker Wear jacket.  But after clicking on the ad, Mr. Maldonado saw that the jacket was instead made by Off-White, with no mention of Walker Wear.  He then contacted Ms. Walker to inform her about the Infringing Jacket.

29.    Off-White has also promoted the Infringing Jacket on its social media channels, including, for example, the below post on April 12, 2021, featuring the Infringing Jacket:



30.     Defendants' misappropriation and sale of the Mark, including at Saks and farfetch.com, without the permission of April Walker or Walker Wear is, among other things, a clear and substantial violation of Walker Wear's intellectual property rights.

31.     This is, unfortunately, not the first time that Off-White and its founder, Virgil Abloh, have coopted the creativity of other designers.  Indeed, Off-White's predecessor company, Pyrex Vision, "became infamous when it later emerged . . . that Virgil was just slapping his logo onto old Ralph Lauren shirts and charging $550 for the pleasure."[8]  Mr. Abloh later explained in an interview that Off-White "is a continuation of Pyrex" but that he "just legally can't use the name 'Pyrex' anymore [due to copyright issues]."[9]

32.     Mr. Abloh has also been accused of "knocking off the shoe designs of Amsterdam Warehouse co-founder, Elisa van Joolen";[10] "copying a chair design that is part of [his collaboration] with IKEA";[11] "copying a [triangular] hoodie design" from Japanese label ANREALAGE;[12] taking "the 'crossed arrows' logo used by Off-White [from a logo] . . . designed in 1965 by Kinner, Calvert & Associates, a UK-based design group";[13] "copying

---

[8] Alec Leach, *Virgil Abloh's Pyrex Vision Brand is Still Alive, It Just Has a Different Name*, HIGHSNOBIETY (June 22, 2017), https://www.highsnobiety.com/2017/06/22/virgilabloh-pyrex-vision-original.

[9] Matthew Trammel, *Interview: Virgil Abloh on Trolling Fashion Tropes and Icing Hip-Hop's Growing Pains*, THE FADER (Aug. 22, 2014), https://www.thefader.com/2014/08/22/virgil-abloh-interview (alteration in original).

[10] Esiwahomi Ozemebhoya, *6 Times Diet Prada Savagely Called out Fashion Copycats*, HYPEBAE (Mar. 13, 2018), https://hypebae.com/2018/3/diet-prada-fashion-copycat-instagram.

[11] Renz Ofiaza, *Virgil Abloh Called Out for His "MARKERAD" IKEA Chair*, HIGH SNOBIETY (May 30, 2018), https://www.highsnobiety.com/p/virgil-abloh-makerad-ikea-chair-design.

[12] Robert Patos, *Diet Prada Calls out Virgil Abloh for Yet Another Uncredited Design*, Hypebeast (June 8, 2018), https://hypebeast.com/2018/6/diet-prada-virgil-abloh-uncredited-design-hoodie.

[13] Jack Stanley, *Diet Prada Traces the Origins of Off-White's "Crossed Arrows" Logo*, HYPEBEAST (June 21, 2018), https://hypebeast.com/2018/6/off-white-logo-origins-diet-pradaglasgow-Airport.

graphic designer AG Fronzoni's work from 1966";[14] and ripping off Norwegian sportswear company Helly Hansen's well-known stripe logo.[15]

33.    Moreover, Mr. Abloh has openly admitted that one of what he describes as his "cheat codes" includes what he refers to as the "three-per-cent approach," in which he creates a purportedly "new design" merely by changing an original one by "three per cent."[16]

34.    Ms. Walker never gave Mr. Abloh permission to make such use of her designs.

**D.    Saks' and Farfetch's Role in Selling the Infringing Jacket**

35.    By February 2021, the Infringing Jacket was made available for sale on Defendant Saks' website, www.saksfifthavenue.com, for $1,405.  As recently as August 4, 2021, the Infringing Jacket was available for sale on the Saks website, although at the time of the filing of this complaint it was marked as sold out.[17]

36.    As referenced in Paragraph 27, above, Saks also ran targeted Instagram ads promoting the Infringing Jacket and providing a link to the Saks website to purchase the Infringing Jacket.

37.    Upon information and belief, Saks also sold the Infringing Jacket at their brick-and-mortar stores, including at their flagship store in midtown Manhattan.

---

[14] Tora Northman, *Diet Prada Calls out Virgil Abloh for Copying Work From a Graphic Designer*, HYPEBAE (Aug. 27, 2018), https://hypebae.com/2018/8/virgil-abloh-off-white-diet-pradacopy.

[15] Heather Snowden, *Helly Hansen Suing Off-White Over Alleged Infringement*, HIGH SNOBIETY (July 13, 2018), https://www.highsnobiety.com/p/helly-hansen-suing-off-white/.

[16] Doreen St. Felix, *Virgil Abloh, Menswear's Biggest Star*, The New Yorker (Mar. 11, 2019), https://www.newyorker.com/magazine/2019/03/18/virgil-abloh-menswears-biggest-star.

[17] Off-White Diagonal Varsity Bomber Jacket, Saks Fifth Avenue, https://www.saksfifthavenue.com/product/off-white-diagonal-varsity-bomber-jacket-0400013439913.html (last accessed August 20, 2021).

38.    By February 2021, the Infringing Jacket was also made available for sale on Defendant Farfetch's website, farfetch.com, for $2,250.  As of August 20, 2021, the Infringing Jacket continues to be available for sale on farfetch.com.[18]

**E.  Potential Consumers Are Confused As To The Source of the Infringing Jacket**

39.    After receiving the initial Instagram direct message alerting her to the existence of the Infringing Jacket on February 27, 2021, Ms. Walker posted a screenshot of the Saks advertisement featuring the Infringing Jacket on her personal Instagram account (@iamaprilwalker).

40.    After she did so, she received many messages from her followers and potential consumers about the Infringing Jacket, many of whom expressed congratulations to Ms. Walker for having her designs offered at Saks and featured in Saks' advertising until they realized that the Infringing Jacket was actually a rip-off of Ms. Walker's Mark sold by Defendants.

41.    At that point the congratulatory messages turned into expressions of disbelief and disgust.  For example:

 **mamirocs** I was about to give you props and then I read the caption. So whack! Definitely jacking! 

5w    Reply

---

[18] Off-White monogram print bomber jacket, Farfetch, https://www.farfetch.com/shopping/men/off-white-monogram-print-bomber-jacket-item-16049238.aspx (last accessed August 20, 2021).

 **ms_killerbee** I was ready to order... but then I read. Somebody let them know they COULD NEVAAAA be Walker Wear! And that's on who? Mary had a little fraud! 

5w　1 like　Reply

 **thaowner** Omg I thought it was yours legit wow 😔

5w　1 like　Reply

 **la_linda318** @virgilabloh _Looks like Walker Wear

5w　Reply

 **cwynndi** Omg i thought this was YOURS WAIT it is. Nahhhh they have to come up off that. Yes aleays theirving but we aint having that ANYMORE. Damn. 

5w　Reply

 **erick_sermon** ✓ I thought this was yours...

8w　19 likes　Reply

 **windiwashington** Omgosh! Sis I thought this was your jacket! Oh NO!!!! 😭

8w　2 likes　Reply

 **diana4med** I thought this was your gear?
8w　1 like　Reply

14

**F. Defendants' Continued Infringement**

42.     Upon learning of Defendants' infringement, Ms. Walker began looking for appropriate counsel.  She ultimately retained the undersigned and she along with counsel began to investigate Defendants' infringement and potential redress.

43.     After conducting an investigation, on June 1, 2021, Walker Wear, through its counsel, wrote to Off-White and Saks to notify both parties of the infringing activities.  A copy of that letter is attached as Exhibit A.  After initially not hearing back from Saks, Walker Wear, through its counsel, sent a follow-up letter on June 29, 2021.  A copy of that letter is attached as Exhibit B.

44.     On July 6, 2021, despite being made aware of the infringement and that it was causing confusion in the market, counsel for Off-White and Saks informed Ms. Walker's counsel that they would not cease using the Mark or selling the Infringing Jacket or other goods featuring the Mark.  Defendants also refused to offer any payment for their infringement or otherwise to address the harm already caused.

45.     On August 20, 2021, Walker Wear, through its counsel, sent a final letter to counsel for Off-White and Saks, responding to the points raised in the July 6, 2021 letter and informing Off-White and Saks that Walker Wear would move forward with this Complaint.  A copy of that letter is attached as Exhibit C.

46.     As of the time this Complaint was filed, Defendants are still selling the Infringing Jacket on www.farfetch.com.

47.     In view of Defendants' inadequate response, it is reasonable to conclude that Defendants will continue to infringe the Mark, and thereby cause further loss and damage to Walker Wear, unless enjoined from doing so.

## FIRST CAUSE OF ACTION
### Direct Trademark Infringement:  15 U.S.C. § 1114(a)

48.     Walker Wear incorporates the allegations contained in paragraphs 1-47 as if fully set forth herein.

49.     Walker Wear is the owner of the Mark and the Trade Dress.  Walker Wear's Trade Dress is inherently distinctive, has acquired secondary meaning, and is not functional.

50.     Without Walker Wear's authorization or consent, Defendants have distributed, promoted, provided, offered for sale and sold in commerce the Infringing Jacket.  They have misappropriated the Mark and the Trade Dress by copying the identifying elements of that trade dress.

51.     Defendants' actions have caused and will continue to cause confusion and mistake and to deceive potential customers and the general purchasing public as to the source, origin, or sponsorship of the Infringing Jacket, and are likely to deceive the public into believing that the Infringing Jacket originates with, is associated with, is sponsored by, is endorsed by, or is authorized or licensed by Walker Wear, all to the damage and detriment of Walker Wear.

52.     Defendants were, and continue to be, knowing and willful participants in the marketing and sale of the Infringing Jacket.

53.     Defendants' use, offering for sale, and sale of the Infringing Jacket constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(a).

54.     Defendants' infringement as described herein has been and continues to be intentional, willful, and without regard to Walker Wear's exclusive rights in the Mark.  On information and belief, Defendant Off-White has at all pertinent times been aware of Walker Wear and its Mark and Trade Dress.  As discussed in Paragraphs 42-47 above, Defendants Off-

White and Saks have also refused to cease infringing Walker Wear's intellectual property rights despite being put on notice of the violation.

55.     As a result of Defendants' conduct, Walker Wear has suffered—and, unless Defendants' conduct is preliminarily and permanently enjoined, will continue to suffer—actual damages and irreparable harm as to which it has no adequate remedy at law.

56.     Because Defendants' actions have been willful, Walker Wear is entitled to an award of costs and, this being an exceptional case, enhanced damages and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### Federal Unfair Competition:  15 U.S.C. § 1125(a)

57.     Walker Wear incorporates the allegations contained in paragraphs 1-56 as if fully set forth herein.

58.     The Mark is inherently distinctive and/or has acquired secondary meaning within the relevant market.

59.     As a result of Defendants' conduct, consumers have already been and are likely to continue to be confused, mistaken, or deceived as to the affiliation, connection, and/or association of the Infringing Jacket with Walker Wear, or as to the origin, sponsorship, or approval of the Infringing Jacket by Walker Wear, and/or as to the nature, characteristics, or qualities of the Infringing Jacket.

60.     Defendants' direct and contributory infringement of the Mark as described herein has been and continues to be intentional, willful, and without regard to Walker Wear's rights. On information and belief, Defendant Off-White has at all pertinent times been aware of Walker Wear and its Mark and Trade Dress.  As discussed in Paragraphs 42-47 above, Defendants Off-

White and Saks have also refused to cease infringing Walker Wear's intellectual property rights despite being put on notice of the violation.

61.    Defendants' unauthorized use of the Mark in interstate commerce constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.    As a result of Defendants' wrongful conduct, Walker Wear has suffered—and unless Defendants' conduct is permanently enjoined, will continue to suffer—actual damages and irreparable harm, as to which it has no adequate remedy at law.

63.    Because Defendants' actions have been willful, Walker Wear is entitled to treble damages, and, this being an exceptional case, reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### Dilution:  15 U.S.C. § 1125(c)

64.    Walker Wear incorporates the allegations contained in paragraphs 1-63 as if fully set forth herein.

65.    The Mark is distinctive and famous and has been used by Walker Wear in connection with clothing for nearly thirty years.

66.    Off-White began using, offering for sale, and selling the Mark subsequent to it becoming famous, thereby causing dilution of the Mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

67.    Defendants' actions have been intentional, willful, and committed in bad faith. On information and belief, Defendant Off-White has at all pertinent times been aware of Walker Wear and its Mark and Trade Dress.  As discussed in Paragraphs 42-47 above, Defendants Off-White and Saks have also refused to cease infringing Walker Wear's intellectual property rights despite being put on notice of the violation.

68.     As a result of Defendants' wrongful conduct, Walker Wear has suffered—and unless Defendants' conduct is permanently enjoined, will continue to suffer—actual damages and irreparable harm, as to which it has no adequate remedy at law.

69.     Because Defendants' actions have been willful, Walker Wear is entitled to treble damages, and, this being an exceptional case, reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION
## Common Law Trademark Infringement Under New York Law

70.     Walker Wear incorporates the allegations contained in paragraphs 1-69 as if fully set forth herein.

71.     The Mark is inherently distinctive and/or has acquired secondary meaning within the relevant market.

72.     The Mark has achieved market penetration throughout the United States generally, and New York specifically.

73.     Walker Wear has prior common law trademark rights in the Mark based on its adoption and continuous commercial use of the Mark in New York before all others, including Defendants.  Consumers in New York recognize the Mark as designating the corresponding Walker Wear's brand and products.

74.     The commercial use of the Infringing Jacket by Defendants in New York, as set forth above, is likely to, and does in fact, deceive consumers or cause confusion or mistake as to the affiliation, connection, or association of the Infringing Jacket with Walker Wear, or as to the origin, sponsorship, or approval by Walker Wear of the Infringing Jacket.

75.     Defendants' direct and contributory infringement of the Mark as described herein has been and continues to be intentional, willful, and without regard to Walker Wear's rights. On information and belief, Defendant Off-White has at all pertinent times been aware of Walker

Wear and its Mark and Trade Dress. As discussed in Paragraphs 42-47 above, Defendants Off-White and Saks have also refused to cease infringing Walker Wear's intellectual property rights despite being put on notice of the violation.

76.    Defendants' unauthorized use of the Mark in commerce in New York constitutes trademark infringement in violation of New York common law.

77.    As a result of Defendants' wrongful conduct, Walker Wear has suffered—and unless Defendants' conduct is permanently enjoined, will continue to suffer—actual damages and irreparable harm, as to which it has no adequate remedy at law.

78.    Walker Wear is entitled to recover Defendants' profits, Walker Wear's ascertainable damages, and Walker Wear's cost of suit. Because Defendants' conduct is willful, Walker Wear is also entitled to recover reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**<u>Common Law Unfair Competition Under New York Law</u>**

79.    Walker Wear incorporates the allegations contained in paragraphs 1-78 as if fully set forth herein.

80.    The Mark is inherently distinctive and/or has acquired secondary meaning within the relevant market.

81.    The Mark has achieved market penetration throughout the United States generally, and New York and this District specifically.

82.    Walker Wear has prior common law trademark rights in the Mark based on its adoption and continuous commercial use of the Mark in New York before all others, including Defendants. Consumers in New York recognize the Mark as designating and corresponding to Walker Wear's brand and products.

20

83.    The commercial use of the Infringing Jacket by Defendants in New York, as set forth above, is likely to, and does in fact, deceive consumers or cause confusion or mistake as to the affiliation, connection, or association of the Infringing Jacket with Walker Wear, or as to the origin, sponsorship, or approval by Walker Wear of the Infringing Jacket.

84.    On information and belief, Defendants' direct and contributory infringement of the Mark as described herein has been and continues to be intentional, willful, and without regard to Walker Wear's rights.  Defendants' acts constitute fraud, oppression, and malice.  On information and belief, Defendant Off-White has at all pertinent times been aware of Walker Wear and its Mark and Trade Dress.  As discussed in Paragraphs 42-47 above, Defendants Off-White and Saks have also refused to cease infringing Walker Wear's intellectual property rights despite being put on notice of the violation.

85.    Defendants' unauthorized use of the Mark in commerce in New York constitutes unfair competition in violation of New York common law.

86.    As a result of Defendants' wrongful conduct, Walker Wear has suffered—and unless Defendants' conduct is permanently enjoined, will continue to suffer—actual damages and irreparable harm, as to which it has no adequate remedy at law.

## SIXTH CAUSE OF ACTION
### Violation of Deceptive Acts and Practices:  N.Y. Gen. Bus. Law § 349

87.    Walker Wear incorporates the allegations contained in paragraphs 1-86 as if fully set forth herein.

88.    Through the unlawful use of the Mark by Defendants as described above, Defendants have engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

89.     Defendants' conduct, as described above, was and remains a willful and deliberate attempt to mislead consumers.  On information and belief, Defendant Off-White has at all pertinent times been aware of Walker Wear and its Mark and Trade Dress.  As discussed in Paragraphs 42-47 above, Defendants Off-White and Saks have also refused to cease infringing Walker Wear's intellectual property rights despite being put on notice of the violation.

90.     As such, Defendants' conduct constitutes the use of deceptive acts or practices in the conduct of business, trade, or commerce.  Defendants' conduct has deceived or materially misled, or has a tendency to deceive and materially mislead, the consuming public, and has both injured and will continue to injure Walker Wear's business, all in violation of N.Y. Gen. Bus. Law § 349.

91.     As a result of Defendants' wrongful conduct, Walker Wear has suffered—and unless Defendants' conduct is permanently enjoined, will continue to suffer—actual damages and irreparable harm, as to which it has no adequate remedy at law.

92.     Pursuant to N.Y. Gen. Bus. Law § 349(h), Walker Wear is entitled to enjoin Defendants' unlawful conduct as well as to obtain damages in an amount to be determined at trial, costs, disbursements, and reasonable attorney's fees.

## SEVENTH CAUSE OF ACTION
### Trademark Dilution under New York Law:  N.Y. Gen. Bus. Law § 360-l

93.     Walker Wear incorporates the allegations contained in paragraphs 1-92 as if fully set forth herein.

94.     The Mark has acquired distinctiveness and is widely recognized by the general consuming public of the State of New York as a designation of source of Walker Wear's products.

95.    Without Walker Wear's authorization or consent, Off-White has distributed, promoted, provided, offered for sale, and sold in commerce the Infringing Jacket.

96.    As a result of Defendants' conduct, the public is likely to assume, incorrectly, that there is an association between the Infringing Jacket and Walker Wear.

97.    Defendants' use, offering for sale, and sale of the Infringing Jacket is likely to dilute and blur the distinctive quality of the Mark.

98.    Defendants' dilution of the Mark as described herein has been and continues to be intentional, willful, and injurious to Walker Wear's business and reputation.  On information and belief, Defendant Off-White has at all pertinent times been aware of Walker Wear and its Mark and Trade Dress.  As discussed in Paragraphs 42-47 above, Defendants Off-White and Saks have also refused to cease infringing Walker Wear's intellectual property rights despite being put on notice of the violation.

99.    Absent injunctive relief, Defendants will continue to dilute and whittle away the reputation and value enjoyed by Walker Wear in the Mark.  Walker Wear is therefore entitled to injunctive relief.

100.    Defendants' conduct as described above constitutes trademark dilution under New York law, resulting in damage to Walker Wear and the substantial business and goodwill symbolized by the Mark, in violation of New York Anti-Dilution Statute, N.Y. Gen. Bus. Law § 360-l.

### EIGHTH CAUSE OF ACTION
### Unjust Enrichment

101.    Walker Wear incorporates the allegations contained in paragraphs 1-100 as if fully set forth herein.

102.    Upon information and belief, as a result of Defendants' unauthorized use of the Mark, Defendants have profited from its offering for sale and sale of the Infringing Jacket.

103.    Upon information and belief, Defendants have been unjustly enriched by unfairly profiting from their misappropriation of the Mark.

104.    Walker Wear has been damaged by Defendants' unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Walker Wear respectfully seeks the following relief:

1.    Entry of judgment for Walker Wear on each of its claims;

2.    An order and judgment preliminarily and permanently enjoining Defendants and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from further acts of infringement or dilution of the Mark;

3.    An award of actual damages sustained by Walker Wear as a result of Defendants' infringement of the Mark and/or an accounting of Defendants' profits in an amount to be proven at trial, or at Walker Wear's election, an award of statutory damages pursuant to 15 U.S.C. § 1117;

4.    An award of enhanced damages, in light of Defendants' willful trademark infringement pursuant to 15 U.S.C. § 1117;

5.    Pre- and post-judgment interest on any past damages;

6.    Costs of suit and reasonable attorneys' fees; and

7.    Any and all other legal and equitable relief as may be available under law and which the Court may deem proper.

## DEMAND FOR JURY TRIAL

Walker Wear hereby demands a jury trial on all issues so triable.

Dated:  August 20, 2021

Respectfully submitted,

WILMER CUTLER PICKERING HALE
AND DORR LLP

By:
*/s/ Ilya Feldsherov*
Ilya Feldsherov
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(t) 212-230-8800
(f) 212-230-8888
ilya.feldsherov@wilmerhale.com

Michael J. Summersgill*
Joseph J. Mueller*
Jason Liss*
Tess Ambrose Foley*
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6261
michael.summersgill@wilmerhale.com
joseph.mueller@wilmerhale.com
jason.liss@wilmerhale.com
tess.foley@wilmerhale.com

*pro hac vice applications to be filed*

*Counsel for Plaintiff*