UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WALKER WEAR LLC,

                Plaintiff,

  -v-                                           No. 21-CV-7073-LTS-SDA

OFF-WHITE LLC, OFF-WHITE
OPERATING SOHO LLC, SAKS FIFTH
AVENUE LLC, and SAKS
INCORPORATED,

                Defendants.
-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

Plaintiff Walker Wear LLC ("Walker Wear" or "Plaintiff") brings this action against Off-White LLC, Off-White Operating Soho LLC (together with Off-White LLC, "Off-White"), Saks Fifth Avenue LLC, and Saks Incorporated (together with Saks Fifth Avenue LLC, "Saks") (collectively, "Defendants"),[1] asserting claims for unfair competition and dilution pursuant to the Lanham Act, 15 U.S.C. §§ 1051, <u>et seq.</u>; for trademark infringement and unfair competition under New York common law; and for violations of New York's General Business Law ("GBL") sections 349 and 360, arising from Defendants' alleged misuse of Plaintiff's "unique and distinctive WW XXL Athletic mark ("the Word Mark") and related unique and distinctive designs prominently featuring the Word Mark (the "Design Mark" (together with the Word Mark, the "Marks"))." (Docket entry no. 62 (the "First Amended Complaint" or "FAC") ¶ 17.) The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331, 1338, and 1367.

---

[1] Plaintiff's claims against an additional defendant, Farfetch.com US LLC, were dismissed with prejudice pursuant to a settlement on February 22, 2022. (<u>See</u> docket entry no. 86.)

Defendants have moved to dismiss two counts of the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6): Plaintiff's claim for dilution under 15 U.S.C. section 1125(c) (the "Dilution Claim") and Plaintiff's claim for deceptive acts and practices under GBL section 349 (the "Section 349 Claim"). (See docket entry no. 69 ("Defs. Mem").) The Court has reviewed the parties' submissions thoroughly. For the following reasons, Defendants' motion to dismiss is granted in its entirety.

## BACKGROUND

The following facts, which are alleged in the FAC or drawn from documents integral to the FAC, are taken as true for the purpose of Defendants' motion to dismiss. April Walker ("Ms. Walker"), the "founder of Walker Wear, has designed signature streetwear clothing since the 1980s." (FAC ¶ 14.) Walker Wear's brand and designs include the Marks. (Id. ¶ 17.) The "[c]lothing items featuring the Marks have been, and remain, best-sellers for Walker Wear." (Id. ¶ 19.)

The Marks have been worn by "hip hop's greatest icons, including The Notorious B.I.G., Tupac, RUN-DMC, the Wu-Tang Clan, and many others." (FAC ¶ 16.) The Walker Wear brand has "enjoyed extensive media coverage," including features on the website of Black Entertainment Television LLC, a podcast run by Vogue, a fashion magazine, and at events such as Fashion Week in New York City. (Id. ¶¶ 20, 21, 22.) The FAC includes links to these features, which cover Ms. Walker's work and career, describing it as "overlooked by mainstream society" (id. ¶ 21 n.1), "entirely separate from the mainstream fashion world" (id. ¶ 21 n.2), or "forgot[ten]" by "[f]ashion [h]istory (id. ¶ 21 n.3). Ms. Walker's designs have also appeared in several movies, such as "Above the Rim," "Straight Outta Compton," and "All Eyez on Me." (FAC ¶ 23.) In 2021, Ms. Walker "became aware" that Off-White was selling a "Diagonal

Stripe Varsity Bomber Jacket" (the "Jacket") which, she alleges, "feature[ed] the Marks." (Id. ¶ 29.) On February 27, 2021, Carlos Maldonado ("Mr. Maldonado"), a friend of Ms. Walker, sent Ms. Walker "an Instagram direct message. . . with a link to a Saks ad on Instagram featuring" the Jacket. (Id. ¶ 30.) According to Mr. Maldonado, the Saks website credited the jacket design to Off-White, "a major fashion house" that Plaintiff claims has a history of "misappropriating the work of independent designers like her." (Id. ¶¶ 27, 28, 30.) Off-White has promoted the Jacket on its social media channels as well. (Id. ¶ 31.) In February of 2021, the Jacket was being sold for $1,405 on the Saks website. (Id. ¶¶ 37.)

On February 27, 2021, "Ms. Walker posted a screenshot of the Saks advertisement. . . on her personal Instagram account (@iamaprilwalker)." (Id. ¶ 41.) Ms. Walker then received messages from "followers and potential consumers" stating that they had initially believed the Jacket was a Walker Wear product, "until they realized that the Infringing Jacket was actually a rip-off of Ms. Walker's Mark sold by Defendants." (Id. ¶ 42.) Plaintiffs contend that "these examples demonstrate [that]. . . consumers have been. . . confused, mistaken, or deceived into thinking that they are purchasing a Walker Wear design or a product that is authorized or approved by Walker Wear." (Id. ¶ 44.)

Following outreach between June and August of 2021 to the Defendants regarding the alleged infringement, Walker Wear commenced this action on August 20, 2021. (Id. ¶¶ 46-50.)

DISCUSSION

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)).  This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted).  A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice.  Twombly, 550 U.S. at 555.  In reviewing a motion filed pursuant to Rule 12(b)(6), the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which she relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F. 3d 87, 98 (2d Cir. 2007).  "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff." Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017) (citing Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009)).

Dilution Claim

  Defendants argue for dismissal of the Dilution Claim "because Plaintiff does not plausibly allege that [the Marks] are famous."  (Defs. Mem. at 5.)  Specifically, Defendants contend that (i) the Marks are not "household names" and thus do not reach the level of fame required to support a claim under the Trade Dilution Revision Act ("TDRA"); (ii) Walker Wear's allegations of fame conflate the fame of the Walker Wear brand and of Ms. Walker personally with that of the Marks themselves; (iii) the facts alleged by Walker Wear in support of the Marks' fame amount to conclusory recitations of the factors underlying the statutory fame standard; and (iv) Walker Wear's arguments fail to address statutory factors laid out in Section 1125(c).  (Defs. Mem. at 5-14.)  Defendants' points are well taken.

  The TDRA, 15 U.S.C. section 1125(c), provides that:

> the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C.A. § 1125(c) (Westlaw current through P.L. 117-166).

"Thus, to prevail on a claim under the TDRA, a plaintiff must establish that: (1) the senior mark is famous; (2) the defendant is making use of the junior mark in commerce; (3) defendant's use of the junior mark began after the senior mark became famous; and (4) a likelihood of dilution." New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 321 (S.D.N.Y. 2010) (citation omitted).

In establishing a dilution claim, "the element of fame is the key ingredient because, among the various prerequisites to a dilution claim, the one that most narrows the universe of potentially successful claims is the requirement that the senior mark be truly famous before a court will afford the owner of the mark the vast protections of the TDRA." GMA Accessories, Inc. v. Croscill, Inc., No. 06-CV-6236-GEL, 2008 WL 591803, at *10 (S.D.N.Y. Mar. 3, 2008) (quoting Savin Corp. v. Savin Grp., 391 F.3d 439, 449 (2d Cir. 2004)) (internal alterations omitted). To determine whether a mark is famous, the TDRA provides that:

> [A] mark is famous if it is *widely recognized by the general consuming public* of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:
>
> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C.A. § 1125(c)(2) (Westlaw current through P.L. 117-166) (emphasis added).

Defendants correctly note that the fame requirement has consistently been construed to impose a heavy burden on parties seeking to assert a dilution claim. "Only trademarks that enjoy such broad renown as to at least approach (if not attain) the status of 'household names' may qualify as famous brands under federal law." Schutte Bagclosures Inc. v. Kwik Lok Corporation, 193 F. Supp. 3d 245, 283 (S.D.N.Y. 2016) (collecting cases.) "[A]s courts have noted, the inclusion in the TDRA of the phrase 'widely recognized by the general consuming public of the United States' 'was intended to reject dilution claims based on niche fame, i.e.[,] fame limited to a particular channel of trade, segment of industry or service, or geographic region.'" Luv N' Care, Ltd. v. Regent Baby Products Corp., 841 F. Supp. 2d 753, 757-58 (S.D.N.Y. 2012) (quoting Dan-Foam A/S v. Brand Named Beds, LLC, 500 F. Supp. 2d 296, 307 n.90 (S.D.N.Y. 2007)). "One of the major purposes of the TDRA was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." Id. (quotation and citation omitted). Other brands deemed famous under the TDRA include Nike and Mattel's Hot Wheels. See Nike, Inc. v. Nikepal Int'l, Inc., No. 05-CV-1468-GEB-JFM, 2007 WL 2782030, at *5-6 (E.D. Cal. Sept. 18, 2007) (Nike); Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 635 (9th Cir. 2008) (Hot Wheels).

Plaintiff does not allege plausibly that the Marks are "household names." In contending that her pleading is sufficient, Plaintiff asserts in her opposition that "the Marks have received considerable media coverage and attention, which collectively amount to substantial evidence of fame." (Docket entry no. 76. ("Pl. Mem.") at 9.) Plaintiff notes that media coverage

of the Marks "spans three decades and includes *national* publications and film distributions including by Netflix," and refers in support of this assertion to six media items – three films and three magazine features, in which Walker Wear designs were featured in some way. (Id.) (emphasis in original). As an initial matter, Plaintiff is incorrect that media coverage, even at a far more considerable level, necessarily warrants a finding of fame. See Bd. Of Regents, Univ. of Tex. Sys. v. KST Elec., Ltd., 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008) (finding that a logo associated with the University of Texas football team was not famous, despite its frequently being prominently displayed on national television).

Furthermore, Plaintiff's allegations are simply insufficient to plausibly support an inference that the Marks are analogous to marks that are generally considered household names, such as those belonging to Coca-Cola, Nike, or Budweiser. That "multiple individuals and consumers reacted to Defendants' use of the Marks . . . and believe[ed] them to be associated with Walker Wear," (Pl. Mem. at 11), is scarcely probative of the Marks' national stature, particularly when the individual commenter referenced in the FAC was a "friend" of the Plaintiff and a "fellow clothing designer," and therefore far more likely to be familiar with the Marks than an average member of the public. (FAC ¶ 30) (describing Mr. Maldonado, who initially believed the Jacket to be a Walker Wear design, as "[Plaintiff's] friend and fellow clothing designer"). Such an allegation supports, at most, niche fame within the design or streetwear industry – a form of fame that the TDRA, by design, rejects as unsupportive of a claim for dilution. See Luv N' Care, 841 F. Supp. 2d at 757-58 (noting that inclusion of language limiting fame to brands recognized by the general consuming public "was intended to reject dilution claims based on niche fame").

A review of Plaintiff's pleadings under the statutory factors provided by 15 U.S.C. § 1125(c)(2), supra at 5-6, confirms the Court's analysis. First, the Court considers "the duration, extent, and geographic reach of advertising and publicity" of the Marks. See 15 U.S.C.A. § 1125(c)(2)(A)(i) (Westlaw current through P.L. 117-166). In applying this factor, "courts generally have limited famous marks to those that receive multi-million dollar advertising budgets." Heller Inc. v. Design Within Reach, Inc., No. 09-CV-1909-JGK, 2009 WL 2486054, at *3 (S.D.N.Y. Aug. 14, 2009); see also Mattel, 518 F.3d at 635 (holding that a reasonable jury could find "Hot Wheels" famous because, inter alia, Mattel had spent $350 million on Hot Wheels advertising since its inception). Plaintiff's failure to plead any information about Walker Wear's advertising budget and recognition of the Marks by the general public renders this factor unsupportive of her claim that the Marks are famous. See Heller, 2009 WL 2486054 at *4 (noting that the plaintiff's failure to "include any information about the [mark]'s advertising budget" supported a finding that the mark was not famous).

Second, the Court considers the "amount, volume, and geographic extent of sales of goods or services offered under the [M]ark." 15 U.S.C.A. § 1125(c)(2)(A)(ii) (Westlaw current through P.L. 117-166). Regarding this factor, Plaintiff alleges that "Walker Wear has [] invested substantial time and money in the [M]arks" (Pl. Mem. at 10), and that "[c]lothing items featuring the Marks have been, and remain, best-sellers for Walker Wear." (FAC ¶ 19.) These allegations are, without more, conclusions, which are not a proper factual basis for a finding of fame. See Iqbal, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'") (quoting Twombly, 550 U.S. at 555).

As to the third factor, "actual recognition" of the Marks, see 15 U.S.C.A. § 1125(c)(2)(A)(iii) (Westlaw current through P.L. 117-166), Plaintiff alleges that, "[b]y virtue of the unique and distinctive Marks . . . the American public generally, and consumers of streetwear (a multi-billion-dollar industry), readily recognize, identify, and distinguish Walker Wear's designs." (Pl. Mem. at 5.) This statement, and the media coverage cited by Plaintiff, fail to support a finding of fame because they focus on recognition of either the Walker Wear brand in general or of Ms. Walker's career as a designer. Section 1125 requires consideration of "the duration, extent, and geographic reach of advertising and publicity of *the mark*," 15 U.S.C.A. § 1125(c)(2)(A)(1) (Westlaw current through P.L. 117-166) (emphasis added), not that of the designer or of the brand itself. See Luv N' Care, Ltd., 841 F. Supp. 2d at 757 (finding that allegations of the popularity of the plaintiff's company "lack[] factual references to the trademarks . . . in suit, and therefore do not support the allegation that the marks in the suit are famous"). This factor therefore militates against a finding of fame. The Court concludes its analysis of the sufficiency of the Complaint as to fame by noting that Plaintiff has not pled that the Marks are federally registered, and that the fourth factor therefore also counsels against a finding that the Marks are famous. See 15 U.S.C. § 1125(c)(2)(A)(iv) (Westlaw current through P.L. 117-166).

All four of the statutory factors, therefore, militate against a finding that the Marks are famous, as required to state a claim for dilution under the TDRA. Because Plaintiff has not sufficiently pled that the Marks are famous, she has failed to state a claim for dilution under the TDRA. Defendants' motion to dismiss the Dilution Claim is therefore granted.

Deceptive Acts and Practices

Section 349 of New York's General Business Law ("Section 349") makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). To state a claim for a deceptive acts and practices violation under Section 349, a plaintiff must allege facts indicating that: "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009) (citation omitted). The Defendants argue that Plaintiff's Section 349 Claim must be dismissed because Plaintiff has failed to plead an injury to the public interest, as required to state a claim under the statute.

"It is well settled that trademark infringement claims are not cognizable under [S]ection 349 unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." Chanel, Inc. v. RealReal, Inc., 449 F. Supp. 3d 422, 447 (S.D.N.Y. 2020) (citation, alterations, and quotation omitted). Plaintiff alleges that Defendants' unauthorized use of the Marks "already has caused multiple instances of actual confusion." (Pl. Mem. at 13.) This assertion is insufficient to support a claim under Section 349. "This alleged injury—confusion and deception of the consuming public—. . . is not distinct from the very harm that trademark laws generally seek to redress and thus is not over and above ordinary trademark infringement." Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories LTD, No. 07-CV-6959-DAB, 2009 WL 4857605, at *8 (S.D.N.Y. Dec. 14, 2009) (citation and internal quotation marks omitted). In general:

> Claims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, both constitute situations which courts have found to reflect a public harm that is

too insubstantial to satisfy the pleading requirements [for a claim arising under Section 349].

RCA Trademark Management S.A.S. v. VOXX Intern. Corp., No. 14-CV-2694-LTS-HBP, 2015 WL 5008762, at *4 (S.D.N.Y. Aug. 24, 2015) (citation omitted).  Plaintiff's conclusory allegation that "Defendants' . . . consumer-oriented conduct[] has adversely affected the public interest and has resulted in injury to consumers in New York"  (FAC ¶ 93) is plainly insufficient to support an inference that the gravamen of Plaintiff's claim is harm to the public, rather than harm to Walker Wear.

For these reasons, Defendants' motion to dismiss Plaintiff's claim under Section 349 is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's claim for dilution under the Lanham Act (Third Cause of Action) and Plaintiff's claim arising under GBL Section 349 (Sixth Cause of Action) is granted in its entirety.  This Memorandum Order resolves docket entry number 70.  This case remains referred to Magistrate Judge Stewart Aaron for general pretrial management.

SO ORDERED.

Dated: New York, New York
      August 31, 2022

        /s/ Laura Taylor Swain
      LAURA TAYLOR SWAIN
      Chief United States District Judge